## MOSKOWITZ v. DAVIS.

### In re MOSKOWITZ' ESTATE.

### No. 6527.

Circuit Court of Appeals, Sixth Circuit.

Feb. 16, 1934.

S. N. Weitz, of Cleveland, Ohio, for appellant.

B. S. Brady, of Cleveland, Ohio, for appellee.

Before HICKS, HICKENLOOPER, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

The appellant, Louis Moskowitz, a voluntary bankrupt, set forth in his schedules three contracts in force between himself and Sun-Life-Assurance Company of Canada, herein called the company. Therein they were described as "Insurance Policies" and were claimed as exempt under Ohio General Code, § 9394.[1] His trustee petitioned for an order which was granted by the referee, requiring the bankrupt to turn over these contracts. Appellant then filed a petition for review, which the court dismissed, at the same time confirming the turnover order.· Whereupon the bankrupt appealed.

These contracts are numbered 1,089,796, 1,291,086, and 1,291,087, respectively. At the time appellant purchased them (each of which provided for annual premiums), he discounted the premiums for the entire terms by paying the amounts of $669.52, $2,248.23, and $2,024.07, respectively.

By contract No. 1,089,796, dated October 15, 1928, the company bound itself "to pay to Louis Moskowitz * * * the sum of One Thousand Two Hundred Dollars on the 5th day of October, One Thousand Nine Hundred and Forty-eight * * * if the said Louis Moskowitz be then living, but not oth-

[1] "All policies of life insurance upon the life of any person, which may hereafter mature, and which have been or shall be taken out for the benefit of, or bona fide assigned to the wife or children, or any relative dependent upon such person, or any creditor, shall be held subject to a change of beneficiary if desired, for the benefit of such wife or children, or other relative or creditor, free and clear from all claims of the creditors of such insured person; and the proceeds or avails of all such life insurance shall be exempt from all liabilities from any debt, or debts of such insured person."

erwise." It further provided that: "Should the assured die before the fifth day of October, one thousand nine hundred and forty-eight this policy, if in force, shall thereupon cease and become void, but in lieu thereof the Company will pay to his son, Frank Moskowitz should he survive, otherwise to the assured's son, Monroe Moskowitz, or in the event of his death, then to the executors, administrators or assigns of the assured * * * the sum of the total premiums paid on this policy taken at the tabular annual rate, but without interest; such sum being increased by any existing bonus additions and any accumulated dividends held to the credit of this policy."

There were also provisions, hereinafter to be considered, for cash and loan values and with reference to extended term insurance.

The original and fundamental concept of a life insurance policy was that the beneficiary should be paid a certain sum of money in the event of death. Keckley v. Glass Co., 86 Ohio St. 213, 225, 99 N. E. 299, Ann. Cas. 1913D, 607. To-day there are many kinds of insurance contracts differing in terms, conditions, and provisions, going generally under the name "life insurance policies." As illustrations see sections 9410 to 9417 of Ohio General Code.

We find no occasion for an extended consideration of the features which differentiate one life insurance policy from another. Our immediate question is whether Ohio General Code, § 9391, embraces and includes contract No. 1,089,796. If it does, then the "proceeds or avails" of the contract are exempt under chapter 3, § 6, of the Bankruptcy Act of 1898 (11 USCA § 24); otherwise not.

Section 9394 does not deal with life insurance policies generally, but is limited to life insurance policies upon the *life of any person which have been or shall be taken out for the benefit of his wife, children, dependent relative, or creditors,* and we do not think that the contract in question falls within its terms. The contract does not purport to insure the life of Moskowitz. Upon its face it becomes void if he should die before its maturity. Its primary obligation is to pay him $1,200 if he should live beyond the maturity date. In the event he should not, there is no undertaking to compensate the son Frank for the loss of his father. In such case the obligation of the contract may be discharged by the return of the premiums to the son with certain small additions and dividends. Moskowitz's obvious purpose was to invest his money. If he should live, he had a profit. If, by reason of death before the maturity of the agreement the investment failed, his personal estate was protected to the extent of the premiums paid, and their sum was to be repaid to his son as a distributee of his personal estate.

We think the contract simply represents an investment or pure endowment with a provision for return of premiums rather than life insurance. See Curtis v. N. Y. Life Ins. Co., 217 Mass. 47, 49, 104 N. E. 553, Ann. Cas. 1915C, 945. It is nowhere described as a life insurance policy. To the contrary, the application calls for "a Pure Endowment Policy," and the instrument itself, both upon its initial and cover page, is described as "Pure Endowment Maturing * * * With Return of Premiums If Death Occurs Before Maturity Date. * * *"

The dividend, cash, and loan value provisions of contract No. 1,089,796 are of incidental benefit to the obligee. They do not change the nature of the company's primary obligation to him nor convert into life insurance for the benefit of his son that which was not life insurance by the terms of the primary agreement.

Nor do we think that the "extended term assurance" provision brings it within section 9394. In substance, this provision simply modifies the original contract as to the amount to be paid at maturity in the event Moskowitz had paid three or more full premiums and then defaulted without surrendering the agreement. It does not in any wise change the status of the son nor provide "a stipulated form of insurance," as required by section 9420, subsection 8, of the Ohio General Code. It may also be observed that this "extended term assurance" provision is surplusage, being based upon a contingency which cannot arise because, as above pointed out, Moskowitz had discounted and paid all of the premiums at the outset.

We do not find in In re Weick (C. C. A. 6) 2 F.(2d) 647, anything contrary to our conclusion. The Weick Case dealt with two life insurance policies with incidental endowment features rather than with a simple investment or pure endowment contract.

In view of what we have said with reference to contract No. 1,089,796, contracts No. 1,291,086 and No. 1,291,087 need not be given extended consideration. All three agreements are similar except as to the children designated as beneficiaries, the amounts payable

and the maturity dates, and in the further difference that the last two have no provision whatever for extended term insurance, cash or loan values.

The judgment of the District Court is affirmed.[1]