## HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* LE GIERSE ET AL., EXECUTORS.

No. 237.   Argued January 9, 10, 1941.—Decided March 3, 1941.

*Assistant Attorney General Clark,* with whom *Solicitor General Biddle* and *Messrs. Sewall Key, J. Louis Monarch, Richard H. Demuth,* and *Maurice J. Mahoney* were on the brief, for petitioner.

*Mr. Frederick O. McKenzie* for respondents.

534

535

536

Mr. Justice Murphy delivered the opinion of the Court.

Less than a month before her death in 1936, decedent, at the age of 80, executed two contracts with the Connecticut General Life Insurance Co. One was an annuity contract in standard form entitling decedent to annual payments of $589.80 as long as she lived. The consideration stated for this contract was $4,179. The other contract was called a "Single Premium Life Policy—Non Participating" and provided for a payment of $25,000 to decedent's daughter, respondent Le Gierse, at decedent's death. The premium specified was $22,946. Decedent paid the total consideration, $27,125, at the

time the contracts were executed. She was not required to pass a physical examination or to answer the questions a woman applicant normally must answer.

The "insurance" policy would not have been issued without the annuity contract, but in all formal respects the two were treated as distinct transactions. Neither contract referred to the other. Independent applications were filed for each. Neither premium was computed with reference to the other. Premium payments were reported separately and entered in different accounts on the company's books. Separate reserves were maintained for insurance and annuities. Each contract was in standard form. The "insurance" policy contained the usual provisions for surrender, assignment, optional modes of settlement, etc.

Upon decedent's death, the face value of the "insurance" contract became payable to respondent Le Gierse, the beneficiary. Thereafter, a federal estate tax return was filed which excluded from decedent's gross estate the proceeds of the "insurance" policy. The Commissioner notified respondents Bankers Trust Co. and Le Gierse, as executors of decedent's estate, that he proposed to include the proceeds of this policy in the gross estate and to assess a deficiency. Suit in the Board of Tax Appeals followed, and the Commissioner's action was reversed. 39 B. T. A. 1134. The Circuit Court of Appeals affirmed. 110 F. 2d 734. We brought the case here because of conflict with *Commissioner* v. *Keller's Estate,* 113 F. 2d 833, and *Helvering* v. *Tyler,* 111 F. 2d 422. 311 U. S. 625.

The ultimate question is whether the "insurance" proceeds may be included in decedent's gross estate.

Section 302 of the Revenue Act of 1926 (44 Stat. 9, 70; as amended, 47 Stat. 169, 279; 48 Stat. 680, 752) provides: "The value of the gross estate of the decedent shall be determined by including the value at the time

of his death of all property, real or personal, tangible or intangible . . .—(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life." Thus the basic question is whether the amounts received here are amounts "receivable as insurance" within the meaning of § 302 (g).

Conventional aids to construction are of little assistance here. Section 302 (g) first appeared in identical language in the Revenue Act of 1918 as § 402 (f). 40 Stat. 1057, 1098. It has never been changed.[1] None of the acts has ever defined "insurance." Treasury Regulations, interpreting the original provision, stated simply: "The term 'insurance' refers to life insurance of every description, including death benefits paid by fraternal beneficial societies, operating under the lodge system." Treasury Regulations No. 37, 1921 edition, p. 23. This statement has never been amplified.[2] The committee report accompanying the Revenue Act of 1918 merely noted that the provision taxing insurance receivable by the executor clarified existing law, and that the provision taxing insurance in excess of $40,000 receivable by specific beneficiaries was inserted to prevent tax evasion. House Report No. 767, 65th Cong., 2d Sess., p. 22.[3] Sub-

---

[1] Act of 1921: 42 Stat. 227, 279; Act of 1924: 43 Stat. 253, 305; Act of 1926: 44 Stat. 9, 71; Code of 1939: 53 Stat. 1, 122.

[2] Regulations No. 63, p. 26; Regulations No. 68, p. 31; Regulations No. 70, 1926 edition, p. 30; Regulations No. 70, 1929 edition, p. 33; Regulations No. 80, p. 62.

[3] ". . . [Insurance payable to specific beneficiaries does] not fall within the existing provisions defining gross estate. It has been brought to the attention of the committee that wealthy persons have and now anticipate resorting to this method of defeating the

sequent committee reports do not mention § 302 (g). Transcripts of committee hearings in 1918 and since are equally uninformative.[4]

Necessarily, then, the language and the apparent purpose of § 302 (g) are virtually the only bases for determining what Congress intended to bring within the scope of the phrase "receivable as insurance." In fact, in using the term "insurance" Congress has identified the characteristic that determines what transactions are entitled to the partial exemption of § 302 (g).

We think the fair import of subsection (g) is that the amounts must be received as the result of a transaction which involved an actual "insurance risk" at the time the transaction was executed. Historically and commonly insurance involves risk-shifting and risk-distributing. That life insurance is desirable from an economic and social standpoint as a device to shift and distribute risk of loss from premature death is unquestionable. That these elements of risk-shifting and risk-distributing are essential to a life insurance contract is agreed by courts and commentators. See for example: *Ritter* v. *Mutual Life Ins. Co.,* 169 U. S. 139; *In re Walsh,* 19 F. Supp. 567; Guaranty Trust Co. v. Commissioner, 16 B. T. A. 314; Ackerman v. Commissioner, 15 B. T. A. 635; Couch, Cyclopedia of Insurance, Vol. I, § 61; Vance,

---

estate tax. Agents of insurance companies have openly urged persons of wealth to take out additional insurance payable to specific beneficiaries for the reason that such insurance would not be included in the gross estate. A liberal exemption of $40,000 has been included and it seems not unreasonable to require the inclusion of amounts in excess of this sum. *Id.,* p. 22.

The same comment appears in Senate Report No. 617, 65th Cong., 3d Sess., p. 42.

[4] The curious consistency and inadequacy of § 302 (g) have not escaped notice. See Paul, Life Insurance and The Federal Estate Tax, 52 Harv. L. Rev. 1037; Paul, Studies in Federal Taxation, 3d Series, p. 351; *United States Trust Co.* v. *Sears,* 29 F. Supp. 643, 650.

Insurance, §§ 1–3; Cooley, Briefs on Insurance, 2d edition, Vol. I, p. 114; Huebner, Life Insurance, Ch. 1. Accordingly, it is logical to assume that when Congress used the words "receivable as insurance" in § 302 (g), it contemplated amounts received pursuant to a transaction possessing these features. *Commissioner* v. *Keller's Estate, supra; Helvering* v. *Tyler, supra; Old Colony Trust Co.* v. *Commissioner,* 102 F. 2d 380; Ackerman v. Commissioner, *supra.*

Analysis of the apparent purpose of the partial exemption granted in § 302 (g) strengthens the assumption that Congress used the word "insurance" in its commonly accepted sense. Implicit in this provision is acknowledgment of the fact that usually insurance payable to specific beneficiaries is designed to shift to a group of individuals the risk of premature death of the one upon whom the beneficiaries are dependent for support. Indeed, the pith of the exemption is particular protection of contracts and their proceeds intended to guard against just such a risk. See *Commissioner* v. *Keller's Estate, supra; United States·Trust Co.* v. *Sears,* 29 F. Supp. 643; Hughes, Federal Death Tax, p. 91; Comment, 38 Mich. L. Rev. 526, 528; compare *Chase National Bank* v. *United States,* 28 F. Supp. 947; *In re Walsh, supra; Moskowitz* v. *Davis,* 68 F. 2d.818. Hence, the next question is whether the transaction in suit in fact involved an "insurance risk" as outlined above.

We cannot find such an insurance risk in the contracts between decedent and the insurance company.

The two contracts must be considered together. To say they are distinct transactions is to ignore actuality, for it is conceded on all sides and was found as a fact by the Board of Tax Appeals that the "insurance" policy would not have been issued without the annuity contract. Failure, even studious failure, in one contract to refer to the other cannot be controlling. Moreover,

authority for such consideration is not wanting, however unrealistic the distinction between form and substance may be. *Commissioner* v. *Keller's Estate, supra; Helvering* v. *Tyler, supra.* See Williston, Contracts, Vol. III, § 628; Paul, Studies in Federal Taxation, 2d series, p. 218; compare *Pearson* v. *McGraw,* 308 U. S. 313.[5]

Considered together, the contracts wholly fail to spell out any element of insurance risk. It is true that the "insurance" contract looks like an insurance policy, contains all the usual provisions of one, and could have been assigned or surrendered without the annuity. Certainly the mere presence of the customary provisions does not create risk, and the fact that the policy could have been assigned is immaterial since, no matter who held the policy and the annuity, the two contracts, relating to the life of the one to whom they were originally issued, still counteracted each other. It may well be true that if enough people of decedent's age wanted such a policy it would be issued without the annuity, or that if the instant policy had been surrendered a risk would have arisen. In either event the essential relation between the two parties would be different from what it is here. The fact remains that annuity and insurance are opposites; in this combination the one neutralizes the risk customarily inherent in the other. From the company's viewpoint, insurance looks to longevity, annuity to transiency. See *Commissioner* v. *Keller's Estate, supra; Helvering* v. *Tyler, supra; Old Colony Trust Co.* v. *Commissioner, supra; Carroll* v. *Equitable Life Assur. Soc.,* 9 F. Supp. 223; Note, 49 Yale L. J. 946; Cohen, Annuities and Transfer Taxes, 7 Kan. B. A. J. 139.

[5] *Legg* v. *St. John,* 296 U. S. 489, is not to the contrary. There nothing indicated that the one contract would not have been issued without the other; there was no necessary connection between the two.

Here the total consideration was prepaid and exceeded the face value of the "insurance" policy. The excess financed loading and other incidental charges. Any risk that the prepayment would earn less than the amount paid to respondent as an annuity was an investment risk similar to the risk assumed by a bank; it was not an insurance risk as explained above. It follows that the sums payable to a specific beneficiary here are not within the scope of § 302 (g). The only remaining question is whether they are taxable.

We hold that they are taxable under § 302 (c) of the Revenue Act of 1926, as amended, as a transfer to take effect in possession or enjoyment at or after death. See *Helvering* v. *Tyler, supra; Old Colony Trust Co.* v. *Commissioner, supra; Kernochan* v. *United States,* 29 F. Supp. 860; Guaranty Trust Co. v. Commissioner, *supra;* compare, *Gaither* v. *Miles,* 268 F. 692; Comment, 38 Mich. L. Rev. 526; Comment, 32 Ill. L. Rev. 223.

The judgment of the Circuit Court of Appeals is

*Reversed.*

The CHIEF JUSTICE and MR. JUSTICE ROBERTS think the judgment should be affirmed for the reasons stated in the opinion of the Circuit Court of Appeals.