ESTATE OF HARRY L. MEARKLE, DECEASED, FIDELITY-PHILADELPHIA TRUST COMPANY AND CHARLOTTE H. MEARKLE, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 96436.  Promulgated December 5, 1941.

*John B. Peery, C. P. A.,* for the petitioners.
*Eugene G. Smith, Esq.,* for the respondent.

#### OPINION.

DISNEY: This proceeding involves Federal estate tax. The respondent determined a deficiency of $31,449.71. The questions for consideration are whether certain contracts are within the exemption allowed, by section 302 (g) of the Revenue Act of 1926, as amended, for insurance receivable by beneficiaries other than an executor, under policies taken out by a decedent upon his own life; and whether certain joint and survivor annuity contracts are bases for inclusion of amounts in gross estate, and, if so, the basis of value thereof.

The parties filed a stipulation of all facts, including exhibits referred to therein. In addition, certain facts were alleged and admitted by the pleadings. By reference we find the facts to be as admitted and stipulated, including the exhibits referred to in the

stipulation. So far as necessary to consideration of the questions for solution, they may be summarized as follows:

The petitioners are the duly appointed, qualified, and acting executors of the estate of Harry L. Mearkle, deceased, who died a citizen of the State of Pennsylvania on February 20, 1936. Decedent's wife, Charlotte H. Mearkle, was 67 years of age at the date of decedent's death. The Federal estate tax return for the estate of Harry L. Mearkle, deceased, was filed by the petitioners in the office of the collector at Philadelphia, Pennsylvania.

At the date of decedent's death, there were in effect three contracts as to which there is disagreement as to whether they constitute contracts of insurance within the purview of section 302 (g) of the Revenue Act of 1926, as amended, and six annuity contracts. All of these contracts had been entered into by the decedent. The terms of the respective contracts, so far as pertinent herein, will be set forth in connection with their consideration. The three contracts which are questioned as to whether they constituted insurance, under section 302 (g) of the Revenue Act of 1926, as amended,[1] will be considered first.

I.—Two contracts were made by the decedent in 1933 with the Penn Mutual Life Insurance Co. They are identical and each is entitled "Participating Life Income Policy with Principal Sum Payable at Death." Charlotte H. Mearkle, wife of the decedent, was named as beneficiary, and decedent was named as annuitant, with the right to change the beneficiary. Annuities ceased at death, and the beneficiary then had the right to the insurance. On each policy was stamped the consideration for the life insurance, $4,269.70, and consideration for the life annuity, $1,030.30, total cost $5,300. The annuitant had the right to receive $150 per year in quarterly payments of $37.50 each, and the beneficiary had the right, upon proof of death of the annuitant, to payment of $5,000. At date of issuance the annuitant was 72 years of age, and the beneficiary was 65 years of age.

The petitioner upon brief states, and we agree, that the Board had this question before it in *Estate of Cecile Le Gierse*, 39 B. T. A. 1134, and *Estate of Anna M. Keller*, 39 B. T. A. 1047. Upon appeal of those cases the Supreme Court on March 3, 1941, in *Helvering* v.

---

[1] Sec. 302 [as amended by section 404 of the Revenue Act of 1934]. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside the United States—

\* \* \* \* \*

(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

*Le Gierse*, 312 U. S. 531, and *Keller* v. *Commissioner*, 312 U. S. 543, held that the contracts considered together did not constitute a contract of insurance and that the sums payable thereunder to the beneficiary were not within the scope of section 302 (g), but were taxable under section 302 (c), Revenue Act of 1926, as amended, as a transfer to take effect in possession or enjoyment at or after death. To the same effect see *Commissioner* v. *Clise*, 122 Fed. (2d) 998. We therefore hold that the respondent did not err in denying the $40,000 exemption.

Another contract, No. 4,781,809, was entered into by the decedent on November 4, 1933, with the Mutual Life Insurance Co. of New York. It was labeled "Annual Dividend Single Premium Life Policy" on the life of Henry L. Mearkle, in the amount of $5,000 with single premium of $4,334.85. Charlotte H. Mearkle was named beneficiary upon proof of decedent's death. The right to change the beneficiary was reserved to the decedent, in the absence of assignment other than to the company, or unless otherwise endorsed on the policy. The policy shows no such endorsement, and the record shows no such assignment of policy. The policy provided that the decedent had the right to borrow upon it, to surrender it for cash value after one year, and to assign it upon notice given. It is stipulated that there was also issued to the decedent by the Mutual Life Insurance Co., coincidentally with the issuing of policy No. 4,781,-809, an annuity contract, that neither contract would have been issued without the other, that the decedent collected the annuities under the contract during his life, that the annuities ceased at his death, and that a physical examination of the decedent was not required in connection with policy No. 4,781,809.

The petitioner urges that this contract, as well as those already considered above, is an insurance contract, properly coming within the exemption of $40,000 allowed by the revenue act. The respondent upon brief recognizes the case of *Estate of Anna M. Keller*, *supra*, at that time pending appeal to the Circuit Court, as controlling. We find no essential difference in facts in the two situations presented. Therefore, in the light of the decisions in the *Le Gierse* and *Keller* cases by the Supreme Court, above referred to, we hold that the Commissioner did not err in including in gross estate the proceeds of policy No. 4,781,809.

II.—The decedent also, during 1933, 1934, and 1935, entered into six annuity contracts, all of which were in effect at his death. None of the contracts provides the right to change beneficiary. The terms of the various contracts are not the same. Two, Nos. 5622 and 5642, issued by the Connecticut Mutual Life Insurance Co., are entitled

"Joint and Survivor Single Premium Life Annuity." Three, Nos. 27689, 38020, and 38211, issued by the Mutual Life Insurance Co. of New York, are entitled "Non-Participating Joint and Survivor Annuity", and one, No. 1740077, issued by the Penn Mutual Life Insurance Co., is entitled "Joint & Survivorship Annuity Policy—Non-Participating." Each recites the consideration as the payment of a single premium. No. 5622 provides for payment of a monthly income of $50 "to Harry L. Mearkle and Charlotte H. Mearkle jointly, and to the survivor of them." No. 5642 provides an income of $50 per month "to Henry L. Mearkle, if he be living, if not, to Charlotte H. Mearkle", until February 10, 1944, with provision for payment to a daughter of the annuitants in case of the death of both of them, and in case of the death of the daughter, for the payment of present worth of installments due, with interest, to the executors or administrators of the last survivor. No. 27689 provides for annuity payments of $169.67 per month, "to said Henry L. Mearkle if said Henry L. Mearkle be living on its due date or if said Henry L. Mearkle be not then living to said Charlotte H. Mearkle", the payments to continue "until the death of the last survivor of Henry L. Mearkle * * * and Charlotte H. Mearkle." Contracts Nos. 38020 and 38211 both provide for payment of an annuity of $50 per month "until the death of the last survivor of Henry L. Mearkle and Charlotte H. Mearkle the Annuitants" and provide that "Each such annuity payment shall be payable, when due, to said annuitants share and share alike, if both be living on its due date or if one only of said annuitants be then living to that one." Contract No. 1740077 provides for payment "to Henry L. Mearkle if living as each annuity payment falls due, otherwise to Charlotte H. Mearkle" an income of $507.75 per month "during their joint lifetime, and until the death of the survivor."

In the determination of the deficiency the Commissioner in the case of each annuity included in decedent's gross estate the value of the annuity passing to the surviving wife, as a transfer intended to take effect in possession or enjoyment at the decedent's death, with respect to which he had retained the income, under section 302 (c) of the Revenue Act of 1926 as amended.[2] Also, as to contracts Nos. 5622, 38020, and 38211, the Commissioner based the determination of

---

[2] (c) [As amended by Joint Resolution of March 3, 1931, Public No. 131, Seventy-first Congress, and by section 803 (a) of the Revenue Act of 1932.] To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from the property, * * *

deficiency upon section 302 (e) as amended [3] on the theory that the annuity was jointly held property. The petitioners contend that the interest of Charlotte H. Mearkle in the annuity contracts irrevocably vested at the date of their issuance, and that the decedent did not enjoy income for life from property or investment in connection with the contracts. They argue that the decedent made a gift to his wife at the time of purchase of the contracts "of the amount in excess of what it would have cost to have purchased a single annuity payable to him alone during his life." As to application of section 302 (e), petitioners argue that the act contemplates such property "as is left upon the death of one of the cotenants", and that the annuities here involved are not such property. Upon the first proposition they cite and rely upon *Chemical Bank & Trust Co. et al., Executors*, 37 B. T. A. 535; *Hariot Reynolds Schultz et al., Executrices*, 38 B. T. A. 59; and *D. W. Blacksher et al., Executors*, 38 B. T. A. 998. The respondent points out that the *Chemical Bank* case and the *Schultz* case involved transfers prior to the Joint Resolution of March 3, 1931, amending section 302 (c) of the Revenue Act of 1926, while the contracts here examined were issued thereafter. The *Blacksher* case we do not consider in point, for it involved construction of section 302 (g) with reference to an insurance contract. The annuity involved was merely the manner of payment of the insurance, after decedent's death. Inasmuch as both the *Schultz* and *Chemical Bank* cases involved transfers prior to the amendment of section 302 (c) of the Revenue Act of 1926 by Joint Resolution of March 3, 1931, and section 803 (a) of the Revenue Act of 1932, whereas the transfers here were all made after that date, we think those cases can not be said to control the question here. In the *Schultz* case we emphasized the fact that the transfer was prior to March 3, 1931.

However, this point has recently been decided in *Commissioner v. Clise, supra,* wherein the court upheld the view of the respondent that the value at decedent's death of joint and survivor annuity contracts should be included in the gross estate of the decedent. The same view was taken by the Circuit Court of Appeals for the Fifth Circuit in *Commissioner v. Wilder,* 118 Fed. (2d) 281. Both cases

---

[3] (e) To the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety, by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth : *Provided,* That where such property, or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person : * * *

involved contracts entered into after the Resolution of March 3, 1931, and section 803 (a) of the Revenue Act of 1932 became applicable. We find in the present matter no distinction in principle, and in view of the holdings in the *Clise* and *Wilder* cases, we conclude and hold that the Commissioner did not err in including in decedent's gross estate the value, at the decedent's death, of the joint and survivor annuity contracts. Nor do we think he erred in computing values for the annuities upon the basis of the amount which comparable annuities would cost, at the date of decedent's death, under Regulations 80 (1937 Edition), article 10 (i) (2). No evidence was adduced to show such values to be erroneous, and no authority is cited on the subject. In gift tax cases the cost of duplicating life insurance policies is held to be the value of the gift. *Guggenheim* v. *Rasquin*, 312 U. S. 254; *Powers* v. *Commissioner*, 312 U. S. 259; *United States* v. *Ryerson*, 312 U. S. 260.

Reviewed by the Board.

*Decision will be entered under Rule 50.*