ESTATE OF WILLIAM DOUGLAS CHEW, JR., CARRIE COLE CHEW, MOTHER AND SOLE HEIR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2531.   Promulgated June 2, 1944.

*Clare C. Clark, Esq.*, for the petitioner.
*Homer J. Fisher, Esq.*, for the respondent.

### OPINION.

TURNER, *Judge*: The respondent has determined an estate tax deficiency against petitioner in the amount of $2,984.50. The total of the amounts received by decedent's mother pursuant to the terms of insurance contracts taken out by decedent upon his own life was less than $40,000, and the question is whether, under the facts here, the said amounts are excluded from the decedent's gross estate by section 811 (g) of the Internal Revenue Code.[1]

All the facts have been stipulated and are found as stipulated.

Petitioner is the estate of William Douglas Chew, Jr., deceased, and is being administered under the laws of the State of Louisiana, under a judgment of succession entered August 4, 1941, by the First District Court of Caddo Parish, Louisiana, in which Carrie Cole Chew is named as the mother and sole heir of the deceased.

William Douglas Chew, Jr., died on November 28, 1940, under circumstances which indicated self-destruction. The coroner's records of Caddo Parish, Louisiana, show the cause of death "as suicide by firing pistol into heart." There was no evidence of insanity.

At the time of his death William Douglass Chew was possessed of a large estate, which included three policies issued by the New York Life Insurance Co., a mutual company, and in each of said policies the mother of the decedent was named as the beneficiary. Each policy

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated. except real property situated outside of the United States—

\*        \*        \*        \*        \*        \*        \*

(g) PROCEEDS OF LIFE INSURANCE.—To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

also provided that, in the event the designated beneficiary should pre-decease the insured, the interest of such beneficiary should vest in the insured.

Two of the three policies were "single premium" policies: Policy No. 17,685,321 was issued August 14, 1940, for the amount of $21,200, on which there was paid a single premium of $15,072.35, and Policy No. 17,685,322 was issued on the same date, for the amount of $10,000, on which there was paid a single premium of $7,109.60. Each of the two described policies was designated as "15 Year Endowment—Single Premium—Endowment payable in 15 years or at prior death."

A third policy, No. 17,716,331, was issued September 30, 1940, for the amount of $10,000, and was a "Twenty-Payment Life" policy, which provided for the payment of an annual premium of $357.90.

At the time of the death of the decedent each of the foregoing policies was in full force and effect, but, because of the circumstances under which the decedent died, the New York Life Insurance Co. admitted liability only for an amount equal to the premiums paid thereon, pursuant to the following clause contained in each policy, viz:

In the event of self-destruction during the first two insurance years, whether the Insured be sane or insane, the insurance under this Policy shall be a sum equal to the premium hereon which has been paid to and received by the Company and no more.

The sum of the premiums paid on each of the policies at the time of the death of decedent was as follows:

| Policy No. | Amount |
|---|---|
| 17,685,321 | $15,072.35 |
| 17,685,322 | 7,109.60 |
| 17,716,331 | 357.90 |

According to the records of the New York Life Insurance Co., proceeds of the three policies, which represented refund of premiums in the aggregate amount of $22,539.85, were left at interest, under certificate of deposit No. 70990, dated February 10, 1941, to the credit of Carrie Cole Chew, beneficiary under the policies. This amount was subject to her withdrawal in full on demand, or in amounts of never less than $100 each. The deposits were made according to option No. 1 of the insurance contracts. The insurance company reported the payments called for under the policies, as premiums refunded, upon Treasury Form 712 filed with decedent's estate tax return.

In the estate tax return the amount of $22,539.85, proceeds of the three policies, along with the proceeds of two other policies held by the decedent and payable to his mother as beneficiary, in the aggregate amount of $10,100.18, was included in the gross estate as insurance payable to a beneficiary other than the estate of the deceased, and the specific exemption of $40,000 provided by the statute was

claimed against the aggregate amount of $32,640.03 reported as insurance.

In section 811 (g) of the Internal Revenue Code it is provided that there shall be included in the gross estate of a decedent "the amount receivable * * · * as insurance under policies taken out by the decedent upon his own life" by beneficiaries other than the executor, but only to the extent that the amount so receivable is in excess of $40,000. Here the total amount received by decedent's mother pursuant to the policies taken out by the decedent upon his own life was less than $40,000, and the question is whether the amounts so received were received "as insurance" within the meaning of section 811 (g), *supra*. There is no claim that the said amounts are not a part of the gross estate if the exclusion provided for in section 811 (g) does not apply.

In *Helvering* v. *Le Gierse*, 312 U. S. 531, the Supreme Court, in a case dealing with the applicability of section 302 (g) of the Revenue Act of 1926, a section identical with 811 (g), *supra*, said: "* * * Historically and commonly insurance involves risk-shifting and risk-distributing. That life insurance is desirable from an economic and social standpoint as a device to shift and distribute risk of loss from premature death is unquestionable. That these elements of risk-shifting and risk-distributing are essential to a life insurance contract is agreed by courts and commentators. * * * Accordingly, it is logical to assume that when Congress used the words 'receivable as insurance' in section 302 (g), it contemplated amounts received pursuant to a transaction possessing these features. * * *" The insurance policies here involved are standard insurance contracts. two being designated as "15 Year Endowment—Single Premium—Endowment payable in 15 years or at prior death" policies, and the other as a "Twenty-Payment Life" policy, which provided for the payment of an annual premium. The insured was entitled to enjoy rights and benefits provided for in such policies, such as participation in dividends, guaranteed loan and surrender value, and the right to change beneficiary. The contracts contained the customary options and modes of settlement at maturity. The insurer assumed all risks based upon the death of the decedent in the normal course of events, and had the insured died of natural causes the insurer would have been liable for the full amounts prescribed by the policies. As previously stated, however, each of the policies contained a clause providing that, in the event of self-destruction by the insured during the first two years the policies should be in force, the company should be liable to pay over to the beneficiary the amounts of the premiums paid "and no more." It is true that the policies do term the payments to be made under the circumstances herein "insurance." That the use of the term is not conclusive of the character of the payments to be made is a proposition established by the

Supreme Court in the *Le Gierse* case above, and it is to be noted in the instant case that the insurance company in its records recording the payments and in the certificate of deposit issued to the beneficiary described the said payments as a refund of premiums.

From the facts, we think it apparent that the amounts received under the policies here in question were not the result of any risk-shifting or risk-distributing on the part of either the insured or the insurer. By the plain terms of the contracts, the insurance company, for a period of two years from the effective dates thereof, specifically excluded from the risks which it had assumed, the risk attendant upon the death of the insured by self-destruction. In such an event within the two-year period, the insurance company was required to pay over to the beneficiary of the decedent only the amount which had been received from the insured himself "and no more." With respect to the payments made, the features necessary to bring them within the terms of section 811 (g), *supra*, as amounts received "as insurance" are absent, and the total thereof is includible in the gross estate of the decedent. Sec. 811 (c), Internal Revenue Code. Cf. *Helvering* v. *Le Gierse*, *supra*.

Reviewed by the Court.

*Decision will be entered for the respondent.*

ARUNDELL and VAN FOSSAN, *JJ.*, dissent.