IN THE MATTER OF THE TRANSFER INHERITANCE TAX ASSESSMENT IN THE ESTATE OF GERARD BARNES LAMBERT, DECEASED.

JOHN W. DRYE, JR., J. RICHARDSON DILWORTH AND BANKERS TRUST COMPANY, EXECUTORS OF THE LAST WILL AND TESTAMENT OF GERARD BARNES LAMBERT, DECEASED, APPELLANTS, v. SIDNEY GLASER, ACTING DIRECTOR, DIVISION OF TAXATION, DEPARTMENT OF THE TREASURY, STATE OF NEW JERSEY, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 7, 1971—Decided January 28, 1972.

Before Judges Lewis, Kolovsky and Halpern.

*Mr. E. Parker Hayden, Jr.* argued the cause for appellants (*Messrs. Roberts & Hayden,* attorneys).

*Mr. Herbert K. Glickman,* Deputy Attorney General, argued the cause for respondent (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

Lewis, P. J. A. D.   Appellants, executors of the last will and testament of Gerard Barnes Lambert, deceased, challenged the final determination and tax assessment of the Division of Taxation, Transfer Inheritance Tax Bureau (Bureau), with respect to certain property transfers made by decedent during his lifetime.

We affirm substantially for the reasons set forth in the Assistant chief examiner's findings of fact and conclusions of law that were adopted by the Bureau. The issue presented being one of first impression, we deem it advisable to state the salient facts and the controlling principles of law.

In 1934 Lambert purchased 22 single-premium life insurance policies in conjunction with 22 nonrefundable annuity contracts. The total face amount of the single premium insurance policies was $1,800,000, and the payment therefor was $996,422.75. The cost of the annuity contracts was $936,227.25, which guaranteed the purchaser an annual income of $60,443.74 for the remainder of his life. That same year Lambert created an irrevocable *inter vivos* trust and assigned to the trustees thereof all of the life insurance proceeds, retaining no reversionary or other interest in the policies. He never received any dividends or income from

them. Lambert's children were the primary beneficiaries of the life insurance trust, but they could not benefit therefrom until the grantor's death.

Lambert retained ownership and possession of the annuity contracts and received the annual income therefrom until 1941. Thereafter, and prior to 1953, he made irrevocable assignments of all the income payments to various charitable organizations; he received no benefits from the annuity transaction after 1952.

On February 25, 1967 Lambert died and the trustees collected on the insurance policies a total sum of $2,021,956.56. The Bureau assessed a transfer inheritance tax of $72,105.27 against the proceeds of the insurance trust which was then distributable; this was in addition to the normal taxes on decedent's reported estate of approximately $6,500,000 which are not here involved.

The pivotal issue before us is whether, within the meaning of *N. J. S. A.* 54:34-1 and the exemption provisions of *N. J. S. A.* 54:34-4 and 54:34-1.1, the action of the Bureau in levying a transfer tax on the insurance trust was proper. The language of the pertinent statutory provisions reads:

54:34-1    Transfers taxable
Except as provided in section 54:34-4 of this Title, a tax shall be and is hereby imposed at the rates set forth in section 54:34-2 of this Title upon the transfer of property, real or personal, of the value of five hundred dollars ($500.00) or over, or of any interest therein or income therefrom, in trust or otherwise, to or for the use of any transferee, distributee or beneficiary in the following cases:

\*          \*          \*          \*          \*          \*          \*          \*

c. Where real or tangible personal property within this State of a resident of this State or intangible personal property wherever situate of a resident of this State or real or tangible personal property within this State of a non-resident, is transferred by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death.

54:34-4    Exemptions
The following transfers of property shall be *exempt from taxation*:

\*          \*          \*          \*          \*          \*          \*          \*

c. Property passing to a trustee or trustees of any trust deed or agreement heretofore or hereafter executed by virtue of any contract of insurance heretofore or hereafter in force insuring the life of a resident or nonresident decedent and the proceeds of which are paid or payable at or after the death of such decedent to such trustee or trustees for the benefit of a beneficiary or beneficiaries having any present or future, vested, contingent or defeasible interest under such trust deed or agreement.

54:34–1.1 Irrevocable disposition of reserved income, rights, etc., over property transferred 3 years prior to death

A transfer of property by deed, grant, bargain, sale or gift wherein the transferor is entitled to some income, right, interest or power, either expressly or by operation of law, shall not be deemed a transfer intended to take effect at or after transferor's death if the transferor, more than 3 years prior to death, shall have executed an irrevocable and complete disposition of all reserved income, rights, interests and powers in and over the property transferred. L. 1955, c. 135, p. 623. § 1.

■ The New Jersey Transfer Inheritance Tax, *N. J. S. A.* 54:33–1 *et seq.,* is not a property or estate tax, but a privilege levy on the right of succession to property transferred by a decedent, levied on the transferee, in certain cases specified by the Legislature. See *In re Lichtenstein,* 52 *N. J.* 553, 559 (1968).

■ The executors concede that the insurance policies in the instant matter would not have been issued to their insured without the annuity contracts. The statutory exemption of life insurance policies is therefore inapplicable since the element of risk of death has been offset by the annuity contracts. The type of insured-annuitant agreements under review involves a risk "typical of an investment transaction rather than of life insurance." *Tilney v. Kingsley,* 43 *N. J.* 289, 292 (1964). See also *Helvering v. LaGierse,* 312 *U. S.* 531, 61 S. Ct. 646, 85 *L. Ed.* 996 (1941). Accordingly, the insurance policies are not within the design of *N. J. S. A.* 54:34–4(c). The executors do not seriously contend otherwise. They in essence rely primarily upon the 1955 amendment embodied in *N. J. S. A.* 54:34–1.1 *supra.*

■ It is argued that where, as here, the grantor reserved in the annuity agreements some income, right, interest or

power, and he later irrevocably disposed of all his interest therein, there is no transfer intended to take effect at or after death, and hence the ultimate distributable proceeds of the insured-annuitant transaction would not be subject to a succession or transfer tax. We note, however, that the statute relied upon makes no specific reference to life insurance proceeds such as was done in *N. J. S. A.* 54:34–4(b), (c) and (f), and it is reasonable to assume that, if the Legislature had intended by the 1955 enactment to comprehend life insurance payable upon death, with or without concomitant annuity contracts, it would have so provided in language free from doubt and uncertainty.

It is also urged that the 1955 statute was enacted to conform the New Jersey inheritance tax law to the federal estate tax law and to the estate and inheritance tax laws of New York and Pennsylvania, and we are referred to the statement attached to the 1955 *Assembly Bill* 297 which was ultimately enacted innto law as section 1 of chapter 135 of the laws of that year. An examination of the history of that legislation reveals that it was not sponsored by the Division of Taxation but was apparently adopted to resolve a narrow estate tax problem then pending which did not concern life insurance or annuity contract assets. There is nothing in that history to suggest that it was enacted to alter the essential nature of the New Jersey transfer inheritance tax as a succession levy.

The argument that the proceeds of the instant life insurance policies should be exempt because decedent had relinquished all his interest in the policies and the conjunctive annuities, and that *N. J. S. A.* 54:34–1.1 was adopted to bring the law of New Jersey in harmony with federal and neighboring state laws, ignores the concept of a succession tax levied upon a transferee vis-à-vis a property or estate tax, and the fact that New Jersey, unlike the Federal Government, has not provided for the separate taxation of *inter vivos* gifts. In *Tilney v. Kingsley, supra,* our Supreme Court said:

* * * It does not follow that whenever income is not retained the transfer must be beyond the statute. On the contrary, the statute plainly requires only an intention that the transfer take effect in possession or enjoyment at or after the death of the transferor. If such is the intent and ultimately the fact, it does not matter whether the transferor retained an interest in the thing transferred or whether title as such vested in the transferee before the transferor's death. *Schroeder v. Zink*, 4 *N. J.* 1, 9 (1950) ; *Hartford v. Martin*, 122 *N. J. L.* 283, 286–287 (*E. & A.* 1939) ; *In re Hollander['s Estate]*, 123 *N. J. Eq.* 52, 55–56 (*Prerog.* 1938) ; *Hasbrouck v. Martin*, 120 *N. J. Eq.* 96, 102 (*Prerog.* 1936) ; *cf. Cruthers v. Neeld, supra* (14 *N. J.* [497], at *pp.* 502–503) ; *Bose v. Division of Taxation*, 5 *N. J. Super.* 266, 269–270 (*App. Div.* 1949), certif. denied 4 *N. J.* 74 (1950). [43 *N. J.* at 296–297]

■ Finally, it should be noted that since an orderly society is impossible without government, and revenue is the lifeblood of government, tax statutes should be construed with an eye to the fundamental principle that "ordinarily all property shall bear its just and equal share of the public burden of taxation." *Bloomfield v. Academy of Med. of N. J.*, 47 *N. J.* 358, 363 (1966). It follows that a statute granting an exemption from taxation must be strictly construed and that those claiming entitlement to a statutory tax exemption will bear a heavy burden of proof. *Ibid.* We recognize that strict construction of statutory exemptions to taxation does not mean a begrudging construction, but rather "it means an exemption shall not be extended beyond the ascertainable intention of the Legislature and hence an exemption must be denied if a purpose to grant it is doubtful." *Deubel v. Kervick*, 33 *N. J.* 568, 574 (1960). Doubts are to be resolved in favor of the government and against the person seeking the shelter of an exemption from taxation.

Thus viewed we are satisfied that the present record supports the transfer inheritance tax assessment here challenged.

Affirmed.