Hast, J.
 

 The real controversy between the Bow-mans' and the Tax Commission is whether these contracts are to be considered as life insurance units and annuity units, or are to be considered as contracts of general investment. The plaintiffs claim that each of these contracts is an insurance and annuity contract combined, the insurance part of which is' exempt from taxation under Section 5414-10, General Code, while the income yield on the annuity portion is subject to taxation, to be computed as four per cent of one-half of the purchase price of the annuity feature, in accordance with Section 5389, General Code, which section provides for this method of computation of intangible property tax on annuities where the installment payments include both principal and interest, not separately charged and paid. The Tax Commission claims they should be taxed on the basis of five per cent of the aggregate annual payments made to the plaintiffs as the income yield, by virtue of Section 5388, General Code.
 

 There are two identical questions presented in the records of these cases. They are: (1) Did the court err in admitting the oral testimony of the actuary relating to the character, form and operation of the contracts in question, and (2) assuming the facts to be as necessarily found by the Common Pleas Court in determining the issues before it, are the contracts in question divisible into annuity and insurance contracts for the purpose of intangible-property tax as claimed by the plaintiffs', and as found by the courts below, or
 
 *300
 
 are they single contracts of a general investment character as claimed by the defendant Tax Commission? These problems will be discussed in the order stated.
 

 It is claimed that the parol evidence rule was violated in permitting the actuary to testify regarding these written contracts'. It is apparent, however, from the oral testimony given that it did not tend to contradict or vary the terms of the written contracts, but was in explanation of the characteristic features, and the practical operation of the more or less intricate provisions of these contracts, which are common to all contracts of similar type. The understanding of the court as to the computations entering into the plan of these contracts and their practical operation, so far as necessary to classify them for taxation purposes, was undoubtedly aided by this' testimony, and its reliability and correctness were not refuted by any rebuttal evidence. The fact that a contract is in written form will not preclude inquiry into the nature of the transaction covered by the instrument.
 
 Speyer & Co.
 
 v.
 
 Baker,
 
 59 Ohio St., 11, 25, 51 N. E., 442. The fact that the parties litigant in these cases are each contending for a different interpretation as to the character and effect of these contracts argues that there is some ambiguity in them which would warrant resort to parol explanation. “Extrinsic parol evidence is always admissible to give effect to a written instrument by applying it to its proper subject-matter, by proving the circumstances under which it was made, thereby enabling the court to put itself in the place of the parties', with all the information possessed by them, the better to understand the terms employed in the contract, and to arrive at their intention.” 17 Ohio Jurisprudence, 541, Section 444, and cases cited.
 

 While parol evidence may not be received to contradict or vary the terms of a written instrument as between the parties thereto and their privies, such evidence is admissible when otherwise competent in con
 
 *301
 
 troversies between strangers to the instrument, or between a stranger and a party thereto.
 
 Clapp
 
 v.
 
 Banking Co.,
 
 50 Ohio St., 528, 540, 35 N. E., 308. Since strangers to an instrument have not consented to it and have no right or power to reform or set it aside, they are privileged to show by parol evidence that the instrument does not show the real transaction. 22 Corpus Juris, 1292, Section 1725, on this subject, reads:
 

 “The rule excluding parol evidence to vary or contradict a written instrument applies only in controversies between the parties to the instrument and those claiming under them. It has no application in controversies between a party to the instrument on the one hand and a stranger to it on the other, for the stranger not having assented to the contract is not bound by it, and is therefore at liberty when his rights are concerned to show that the written instrument does not express the full or true character of the transaction. And where the stranger to the instrument is thus free to vary or contradict it by parol evidence, his adversary, although a party to the instrument, must be equally free to do so. This has been held to be true with reference to writings of all kinds, as for example, deeds; mortgages; leases; bills of sale; contracts of sale; licenses; insurance policies, and contractual receipts.”
 

 This was the privilege of the plaintiffs in these cases, and the privilege was likewise open to the defendants. It is the opinion of the court that there was no error in the admission of the testimony in question.
 

 The principal controversy is whether the contracts in question are single contracts with combined insurance and annuity features. The defendant commission claims that they are not, but are pure investment contracts; that the monthly installment payments provided for constitute income on the entire
 
 *302
 
 cash premium paid by the owners, which cash premium less loading charges is to be paid back by the companies at the death of such owners, or at any time they see fit to demand a settlement; and that there is actually no element of risk or insurance, or annuity featurés, in these contracts.
 

 In support of this contention the commission cites two cases,
 
 State, ex rel. Thornton,
 
 v.
 
 Probate Court of Ramsey County,
 
 186 Minn., 351, 243 N. W., 389, and
 
 Ballou
 
 v.
 
 Fisher,
 
 154 Ore., 548, 61 P. (2d), 423. The first of the above named cases’ involves the determination of the state inheritance or succession tax on the lump sum payable on a similar contract to the beneficiaries of the owner at his death, the claim being made by the beneficiary that the contract was one of insurance and, therefore, not taxable under the laws of Minnesota, while the state claimed, and the court held, that the money paid in by the owner was a deposit or investment, returnable at his death, and became part of his estate and, therefore, taxable as such. That case, however, lacks authoritative value for the reason that it was submitted on an agreed statement of facts, a- partial summary of which is given by the court in its opinion wherein it .says: “The policy contracts here involved are not what are ordinarily known as annuity contracts, in which a definite annual sum is to be paid the.annuitant during his life or the life of some other person named in the contract, and in which such annual payments absorb portions of the principal.” According to the records in the cases at bar there is some absorption of principal allotted to the annuity in these contracts, through and by virtue of the payment of the monthly annuity installments.
 

 The
 
 Ballou case
 
 involves the determination of the intangible taxes due on a similar contract under the Oregon intangible tax law, under which law there is a specific exemption from taxation of the “amounts
 
 *303
 
 received by tbe insured as a return of premium or premiums paid by Mm under life insurance, endowment, annuity, inter-insurance or reciprocal contracts, either during the term of the contract or at maturity,” etc., the remainder of the installment payments being subject to the tax. This statute provides a different plan of taxation of annuities from that provided under the laws of Ohio. The tax laws of Ohio do not attempt to segregate and tax income as distinguished from a combination of income and principal where the periodical installment payments include both principal and interest not separately charged and paid, but do provide a method of taxation where there is such a combination of return in the installment payments which are classed as annuities. The Oregon court holds that the payments to the insured were taxable income, and cites the
 
 Thornton case,
 
 above mentioned, as the basis for its holding.
 

 In the opinion of this court, the Tax Commission, as an arm of the state, is not in position to claim that the contracts involved in the cases at bar are not insurance or annuity contracts. Section 665, General Code, provides that “No company * * * whether organized in this state or elsewhere, shall engage either directly or indirectly in this state in the business of insurance, or enter into any contracts substantially amounting to insurance, or in any manner aid therein * * * unless it is expressly authorized by the laws of this state, and the laws regulating it and applicable thereto, have been complied with”; Section 9385, General Code, provides that “No company * * * orgamzed or incorporated * * * under the laws of this or any other state of the United States
 
 * * *
 
 transacting the business of life insurance in this state, shall be permitted or allowed to take any Mnd of risks, except those connected with, or appertaiMng to making insurance on life or against accidents to persons, or sickness, temporary or permanent physical dis
 
 *304
 
 ability, and granting, purchasing and disposing of annuities; nor shall the business of life insurance, or life and accident insurance, in this state, be in any wise conducted or transacted by any company * * * which in this state * * * does a banking or any other kind of business in connection with”insurance ’ ’; and, finally, Section 646, General Code, provides that, upon the filing of its annual statement, the Superintendent of Insurance shall issue to each insurance company authorized to do business in this' state, a certificate that it has complied with the laws of this state, all of which means that unless the companies making the contracts involved in these cases are insurance companies' as claimed by the commission, and unless these contracts are insurance or annuity contracts, they have no right or authority under the laws of Ohio to enter into the contracts in question. In other words, if they are insurance companies admitted to do insurance business in the state of Ohio, they are violating the law in entering into these contracts, if such contracts are of the character claimed by the commission, namely, deposit or investment contracts.
 

 There is no presumption that in making these contracts' these companies are law violators. If such were the case the state of Ohio would be attacking- them by
 
 quo warranto,
 
 rather than permitting them to make such contracts and tacitly recognizing their validity by attempting to collect taxes on the income arising therefrom. Under the circumstances, the commission cannot consistently, claim that these contracts are other than insurance or annuity contracts or both.
 

 Taxation on property in Ohio is' provided only by statute. All tax laws as well as the application of such laws are to be construed strictly against the state.
 
 Cassidy
 
 v.
 
 Ellerhorst,
 
 110 Ohio St., 535, 144 N. E., 252, 42 A. L. R., 372. 38 Ohio Jurisprudence, 725, Section 15, reads':
 
 f
 
 “The intention to tax must be expressed in distinct and unambiguous language, as the language
 
 *305
 
 employed cannot be extended by implication beyond its clear import. If there is any donbt as to the meaning of a tax statute, the construction must be strict, and the doubt must be resolved in favor of the citizen upon whom or property upon which the burden is sought to be imposed, and against the taxing power. Language employed in a taxation statute should not be extended by implication beyond its clear import, or so enlarged in its operation as to embrace subjects of taxation not specifically named. Courts will not by construction interpolate words into the statute to extend its terms.”
 

 Insurance as an item of property, under the legislative policy of this' state, has been given, generally, a preferential status in exemption from taxation. This policy is not an accident, but has doubtless been adopted to encourage savings and thrift on the part of the people to provide for future needs, and to encourage the circulation of surplus wealth in business enterprise. It must be conceded that if the contract provisions contained in the policy of The Penn Mutual Life Insurance Company hereinbefore described and which are involved in the litigation in these cases, had been embodied in two separate contracts, one for life insurance with a single cash premium- of $23,145.45 and the ■ other for a life annuity with a single cash premium of $16,647.45, with the installment payments to be made on the annuity contract as in the policy provided, the guaranteed principal sum to be paid only at the death of Guy C. Bowman, there could be no question that the installment payments would be annuity pure and simple, and taxable as such; and if each of the two contracts had carried conditions to the effect that if the cancellation of and settlement under such contracts were made by the assured before his death, such cancellation and settlement should apply to both contracts simultaneously there would not be, in the opinion of the court, much ground to claim that the installments
 
 *306
 
 paid on the annuity contract, up to the time of settlement, were other than annuity payments, and yet in such case the contractual effect of .such two policies would be identical with that of the dual-form contracts which are involved in this controversy.
 

 The same result would seem to follow in case both the insurance and annuity features are combined in a single divisible contract, where the portion of the single premium allotted to insurance is allowed to accumulate and create an undistributed reserve, while the premium allotted to the annuity contract with its income is' paid out to the owner in installments which not only include the income but a portion of the principal sum originally paid for the annuity, not separately charged and paid, as is shown by the undisputed evidence to occur in the operation of these contracts.
 

 . The complaint of the commission as to the interpretation placed upon these contracts by the plaintiffs is that there is in this1 type of contract such a balancing of risk that there is in fact no risk whatever involved, and, therefore, no element of insurance in the contract. In answer, it may be said that all insurance involves a balancing of risk although it is usually accomplished by spreading, the risk and coverage over the lives of a large number of persons so as to insure the proper actuarial average and thus neutralize the risk. There-can be slight difference where the balancing of risk is accomplished by two contracts or a single divisible one.
 

 Furthermore, under modern practice, insurance contracts contain many so-called investment features in connection with the primary insurance feature, but these are only incidental and do not make them deposit or investment contracts.
 

 Under the terms of the contracts in question, and considering the plan of operation and the source of the monthly disbursements made to the owners as shown by the record, the court is of the opinion that such
 
 *307
 
 monthly installments constitute annuity payments and are taxable as such.
 

 The judgments of the Court of Appeals are affirmed.
 

 Judgments affirmed.
 

 Day, Williams and Matthias, JJ., coucur.