DECISION AND JUDGMENT ENTRY
This divorce action is before the court on appeal from the Lucas County Court of Common Pleas, Domestic Relations Division, which granted the parties a divorce and divided their property. Both parties appeal. For the reasons that follow, we find that the decision of the lower court should be affirmed in part, reversed in part, and remanded.
The parties were married in 1988, and one child was born as issue of the marriage. That child is still a minor. In February 1997, appellee Carrie Jo Zunk filed a complaint for divorce, citing incompatibility. The case was heard before the trial court on May 1, 1998 and June 5, 1998. In its decision of February 2, 1999, the trial court found that certain assets were appellant's[1] separate property. Specifically, the court gave credit to appellant for the following assets:
"Sale of truck and trailer $25,000.00
Sale of racing car and parts $18,500.00
Sale of pickup truck $3,000.00
 Defendant's credit for sale of premarital personal property $46,500.00"
In addition, appellant had purchased a home ("the Clover Lane home") prior to the parties' marriage, and he had made a $3,000 down payment on the home out of premarital assets. Later, appellant and appellee married and lived in the Clover Lane home, selling it some four years before the divorce proceedings commenced. The trial court gave appellant credit for his premarital down payment of $3,000.
The trial court also divided the parties' marital property, including savings bonds, bank accounts, automobiles, pensions, the marital residence, life insurance policies, certain retirement accounts, and interest in both a partnership and a corporation. The court also ordered appellant to pay child support.
The trial court's decision was reduced to judgment on April 22, 1999, and the parties appeal from that judgment. Appellant sets forth the following assignments of error:
 "Assignment of Error No. I THE TRIAL COURT ERRED IN DEEMING ALL OF THE INCREASE IN THE VALUE OF THE MARITAL PREMISES AS `MARITAL PROPERTY.'"
 "Assignment of Error No. II THE TRIAL COURT ERRED BY FAILING TO TAKE INTO CONSIDERATION THE APPELLANT'S FICA AND HEALTH INSURANCE COSTS WHEN CALCULATION [sic] CHILD SUPPORT PURSUANT TO THE OHIO CHILD SUPPORT GUIDELINES."
Appellee sets forth the following cross-assignments of error:
 "I. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION TO THE PREJUDICE OF APPELLEE BY VALUING MR. ZUNK'S FIFTY (50%) PERCENT SHAREHOLDER INTEREST IN Z G, INC., AT $105,653.00"
 "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION TO THE PREJUDICE OF APPELLEE WHEN IT GAVE APPELLANT CREDIT FOR ANY SEPARATE PREMARITAL PROPERTY
 "A. THE CLOVER LANE PROPERTY "1. The trial court erred when it gave appellant credit for $3,000.00 representing the down payment on Clover Lane residence.
 "B. THE THREE ITEMS OF PERSONAL PROPERTY "1. Appellant did not trace the $25,000.00 proceeds from the sale of his truck and trailer
 "2. Appellant did not trace the $18,500 proceeds from the sale of his race car operation
 "3. Appellant did not trace the $3,000.00 proceeds from the sale of his 1979 El Camino truck."
A trial court has broad discretion in dividing property in domestic relation cases. Berish v. Berish (1982), 69 Ohio St.2d 318, 319. Therefore, we may only reverse if we find that the trial court abused its discretion. See id., quoting Cherry v. Cherry (1981), 66 Ohio St.2d 348. The Supreme Court of Ohio has stated that "[t]he term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, quoting State v.Adams (1980), 62 Ohio St.2d 151, 157.
Since appellant's first assignment of error and appellee's second assignment of error (II-A) both relate to the down payment on the Clover Lane home, we shall address them together. R.C. 3105.171(A) defines separate property as follows:
 "(6)(a) "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
 "(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;
 "(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
 "(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;
 "(iv) Any real or personal property or interest in real or personal property acquired by one spouse after a decree of legal separation issued under section 3105.17 of the Revised Code;
 "(v) Any real or personal property or interest in real or personal property that is excluded by a valid antenuptial agreement;
 "(vi) Compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets;
 "(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.
R.C. 3105.171(A)(6)(b) also provides:
 "(b) The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable."
The party claiming that certain assets are separate property has the burden of proving so by a preponderance of the evidence by tracing the asset back to separate property. Peck v. Peck (1994), 96 Ohio App.3d 731,734.
With regard to the Clover Lane home, appellant purchased that home in 1983 for approximately $30,000 before marrying appellee. He made a $3,000 down payment on the home. Appellee does not dispute this fact. After appellant and appellee married in 1988, they lived together in the Clover Lane home, both parties making payments on it. In approximately 1990, appellant executed a joint and survivorship deed naming appellee as a one-half owner of the home. In 1993, the parties sold the home and realized a profit of approximately $30,000.
In dividing the property, the trial court held that: (1) the increase in equity of the Clover Lane home since the date of the marriage was a marital asset; (2) the appreciation of the property was not passive since the parties made improvements to the house and made payments on the mortgage with marital funds; (3) the proceeds from the sale of the home were deposited into a joint account; (4) appellant had failed to establish any appreciation on the property that preceded the marriage, having failed to present evidence as to the number and amount of any mortgages and the nature and date of improvements; and (5) any determination of the premarital appreciation on the property would be merely a "guess." In the end, the court concluded:
 "* * * the Defendant [appellant] failed to establish the value of the premarital appreciation of the real property. The Court further finds that except for the down payment the appreciation of this property is marital property. The Defendant would, however, be entitled to a credit of Three Thousand Dollars ($3,000.00) as separate property for the down payment."
Appellant agrees that the appreciation of the property after the marriage is marital property. However, appellant contends that the trial court abused its discretion in failing to calculate the "resulting appreciation on the down payment and the [premarital] mortgage payments." Appellant suggested a calculation for determining this premarital increase in appreciation, citing Munroe v. Munroe (1997), 119 Ohio App.3d 530,537-538. However, as appellee points out, appellant did not attempt to calculate the appreciation using this formula, and it appears that appellant cannot because the record does not contain all of the information that goes into the calculation. Therefore, we agree with the trial court that the amount of premarital appreciation is uncertain, and the trial court did not abuse its discretion in refusing to credit appellant with any premarital appreciation. See Helgeson v. Helgeson
(Nov. 15, 2000), Logan App. No. 8-2000-14, unreported.
Appellee contends that appellant is not even entitled to his $3,000 premarital contribution since he cannot trace it. Though appellee raised this argument in her post-trial brief in the trial court, she did not make this argument at trial. In fact, appellee testified at the hearing that she was not making a claim to the premarital equity in the Clover Lane home. Accordingly, the trial court did not err in crediting appellant with his $3,000 premarital down payment on the Clover Lane home and refusing to credit him with premarital appreciation. Appellant's first assignment of error is found not well-taken, and that part of appellee's second assignment of error dealing with the Clover Lane home (II-A) is found not well-taken as well.
Appellant contends in his second assignment of error that the trial court erred in calculating child support by failing to take into account the correct FICA credit and appellant's contribution to his daughter's health insurance. First, with regard to the FICA, the child support worksheet in R.C. 3113.215(E) allows in line 11 for a deduction for self-employed individuals: self-employed individual are allowed to deduct 5.6 percent from their adjusted gross income or "* * * the actual marginal difference between the actual rate paid by the self-employed individual and the F.I.C.A. rate." Appellant is partially self-employed and he is partially a W-2 employee. Therefore, appellant would have been entitled to a deduction pursuant to line 11 of the child support guidelines for his self-employment income. At issue is the amount of that deduction. In its order of April 22, 1999, the trial court stated, "The Court averaged Defendant's income for three years. The parties compromised on the self-employment credit, giving Defendant credit for $42,500.00 in self-employment income (1/2 of his total income, and not the actual self-employment paid)." While such an agreement may actually have taken place, it is not reflected in the record. Appellant's actual self-employment income, averaged over the same three years as his W-2 income, is $8,521.
Though it is not entirely clear from the record, the trial court apparently deviated from the child support guidelines because of an agreement between the parties. A trial court, in its discretion, may deviate from the guidelines, see Carpenter v. Reis (1996),109 Ohio App.3d 499, 504, but the trial court should justify the deviation with reference to the statutory factors found in R.C.3113.215(B)(3) and with the appropriate findings required by R.C.3113.215(B)(1). This is true even if the parties agree to deviate from the guidelines. See Dickens v. Joseph (May 30, 2000), Franklin App. No. 99AP-688, unreported. See, generally, DePalmo v. DePalmo (1997),78 Ohio St.3d 535, 540 (even if parties agree about child support, their proposal must be "tested" to ensure that it meets the child support guidelines.)
In this case, the court deviated from line 11 of the child support worksheet, found at R.C. 3113.215(E), but it did not justify its deviation according to R.C. 3113.215(B)(1) and (3). Accordingly, the trial court abused its discretion in setting the amount of the FICA adjustment, and the portion of appellant's second assignment of error relating to the FICA adjustment is found well-taken.
In his second assignment of error, appellant also contends that the trial court erred in not giving appellant credit for health insurance costs he incurred on behalf of the parties' minor child. On line 19 of the child support worksheet, the court entered "0" for "marginal, out-of-pocket costs, necessary to provide for health insurance for the children who are the subject of this order." Since appellant did not submit any evidence that he incurred such costs, the trial court did not abuse its discretion by not giving credit to appellant for these expenses. This portion of appellant's second assignment of error is found not well-taken.
In her first cross-assignment of error, appellee contends that the trial court erred in valuing appellant's interest in Z G, Inc. During the pendency of this action, appellant was in the process of buying the stock of Z G, Inc. held by Robert M. Gilley. Gilley and appellant had each owned one-half of the stock in this corporation. The parties stipulated in writing that, for purposes of valuing appellant's interest in the corporation, the trial court could consider the affidavit of Robert M. Gilley. The Gilley affidavit was filed shortly thereafter, and Gilley averred in the affidavit that the sale price for his one-half of the stock, $171,000, was arrived at as follows:
 "One-half of the net worth of $70,506.95 Z G, Inc. (total assets minus liabilities[)]
 "One-half full value of $35,146.50 [miscellaneous] equipment 
pickup trucks
"One (1) year's salary $50,000.00
"Nine per cent (9%) of sales $15,346.55
(7/1/98 — 9/30/98)
"TOTAL $171,000.00"
Based on the affidavit testimony of Robert M. Gilley, the trial court valued appellant's interest in Z G, Inc. at $105,653, finding that, of the $171,000 sales price, Gilley's salary ($50,000) and his 9 percent portion of the sales ($15,346.55) did not relate to the value of Gilley's stock ownership.
Appellee contends that the total sale price, $171,000, must be presumed to be the fair market value of the stock, and that this conclusion cannot be contradicted by parol evidence (the Gilley affidavit). However, the parol evidence rule applies only to parties to the contract or those claiming under them. Bowman v. Tax Comm'n of Ohio (1939), 135 Ohio St. 295, paragraph one of the syllabus; Sayed v. Fakerdene (Mar. 21, 1980), Lucas App. No. L-79-123, unreported; Smith v. Withrow (Dec. 30, 1991), Butler App. No. CA90-12-234, unreported. According to the Supreme Court of Ohio, "[parol] evidence is admissible when otherwise competent in controversies between strangers to the instrument, or between a stranger and a party thereto." Bowman, 135 Ohio St. 295, at paragraph one of the syllabus. Since appellee is a stranger to the contract between appellant and Gilley, she cannot "claim the benefit of the parol evidence rule."Sayed, supra. Therefore, the Gilley affidavit was properly considered by the trial court, and we cannot say that the trial court abused its discretion in valuing as it did appellant's share of the corporation. Appellee's first cross-assignment of error is found not well-taken.
Finally, appellee claims in her second assignment of error that the trial court erred in giving credit to appellant for certain separate property. We have already resolved the matter of the Clover Lane home. Appellee also claims that the trial court should not have given credit to appellant for proceeds stemming from the sale of a truck and trailer, a race car operation, and an El Camino truck because he did not properly trace the proceeds of these items back to premarital property.
As noted earlier, the party claiming that certain property is separate property has the burden of proving so by a preponderance of the evidence by tracing the asset back to separate property. Peck,96 Ohio App.3d at 734. A trial court resolves this issue as a factual matter, Okos v. Okos
(2000), 137 Ohio App.3d 563, 583, and an appellate court shall not reverse such a finding unless it is against the manifest weight of the evidence. Id. See, also, Barkley v. Barkley (1997), 119 Ohio App.3d 155,159. A judgment will not be reversed as against the manifest weight of the evidence when the judgment is supported by "some competent, credible evidence * * *." C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus.
In this case, appellant testified that he owned the property in question, the truck and trailer, the race car operation, and the El Camino, before the marriage and he sold it during the marriage. Appellee does not dispute this. Appellant also testified that he deposited the proceeds from the sale of these assets into his separate checking account, and he produced bank records to substantiate this. He subsequently used the funds from the sale of the property to start up a business. Appellee produced no evidence to the contrary. The trial court apparently credited appellant's evidence, as it found that appellant had met his burden to show that these assets were separate property. We cannot say that this finding is against the manifest weight of the evidence. See Okos, supra. Accordingly, we find that the trial court did not abuse its discretion in crediting appellant for this separate property, and this portion of appellee's second assignment of error (II-B) is found not well-taken.
On consideration whereof, we find that substantial justice has not been done appellant, and the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is reversed and remanded as to that portion of appellant's second assignment of error relating to the FICA credit. The judgment of the trial court is affirmed in all other respects as it relates to appellant and his assignments of error. We find that substantial justice has been done appellee, and the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed in all respects as it relates to her and her assignments of error. Costs assessed to appellee.
JUDGMENT REVERSED IN PART AND AFFIRMED IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J., James R. Sherck, J., Mark L. Pietrykowski,P.J., CONCUR.
[1] Though both parties have appealed, for ease of discussion Joseph Zunk will be referred to as "appellant" in this opinion and Carrie Jo Zunk will be referred to as "appellee."