CITICASTERS COMPANY, Appellant,

v.

BRICKER & ECKLER, L.L.P., Appellee.

[Cite as *Citicasters Co. v. Bricker & Eckler, L.L.P.*,
149 Ohio App.3d 705, 2002-Ohio-5814.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–020031.

Decided Oct. 25, 2002.

Keating, Muething & Klekamp, P.L.L., James R. Matthews, Daniel J. Donnellon and R. Patrick DeWine, for appellant.

Barrett & Weber, L.P.A., and Michael R. Barrett; Zieger & Carpenter, L.L.P., John W. Zieger and Marion H. Little Jr., for appellee.

HILDEBRANDT, Judge.

{¶ 1} Plaintiff-appellant, Citicasters Company, appeals from the order of the Hamilton County Court of Common Pleas granting judgment on the pleadings to defendant-appellee, Bricker & Eckler, L.L.P., in a suit alleging fraud and negligent misrepresentation. For the following reasons, we affirm.

{¶ 2} In 1998, Citicasters entered into negotiations to buy WRBP, a radio station in Youngstown, Ohio, from a company called Stop 26. One of the shareholders of Stop 26 was Percy Squire, who was also a partner in Bricker & Eckler, a law firm based in Columbus, Ohio. Bricker & Eckler, acting through Squire, represented Stop 26 in the negotiations. In May 1998, Citicasters entered into an asset purchase agreement ("APA") with Stop 26 and its individual shareholders for the sale of the station. At the same time, Citicasters advanced $775,000 to Stop 26 to secure the release of liens against the radio station. That advance was made pursuant to a "security agreement" under which Citicasters received a subordinated security interest in Stop 26's assets. Citicasters made three subsequent cash advances pursuant to amendments to the security agreement and the APA.

{¶ 3} The parties, though, were ultimately unable to consummate the sale of the station under the APA. Citicasters then filed suit against Bricker & Eckler, alleging that it had made misrepresentations concerning the financial status of Stop 26 and that Citicasters had relied on those misrepresentations in entering into the APA and in advancing funds to Stop 26 to facilitate the transaction. Specifically, Citicasters alleged that Bricker & Eckler, through Squire, had

misrepresented the amount of money necessary to obtain the release of liens on the radio station as well as the station's financial ability to secure the release of those liens. Citicasters further alleged that Bricker & Eckler had made misrepresentations about the willingness of senior creditors to release the liens upon payment of certain amounts.

{¶ 4} Bricker & Eckler moved for judgment on the pleadings. The firm argued, inter alia, that the APA was an integrated document and that the parol evidence rule prohibited recovery based upon the alleged misrepresentations, which were not incorporated into the written agreement. The trial court granted Bricker & Eckler's motion.

{¶ 5} On appeal, Citicasters now argues, in a single assignment of error, that the trial court erred in granting judgment on the pleadings. Pursuant to Civ.R. 12(C), judgment on the pleadings is proper where the court construes as true the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the plaintiff and concludes, beyond doubt, that the plaintiff can prove no set of facts to support the claim for relief.[1] We review de novo the granting or denial of a motion for judgment on the pleadings.[2]

{¶ 6} In support of its assignment of error, Citicasters argues that the parol evidence rule had no application to the misrepresentations allegedly made by Squire and that there were sufficient allegations in the complaint to establish justifiable reliance on those misrepresentations. We are not persuaded by these arguments.

{¶ 7} The parol evidence rule is a rule of substantive law intended to protect the integrity of final, written agreements.[3] If contracting parties integrate their negotiations into an unambiguous and final written agreement, any evidence of prior or contemporaneous negotiations, understandings, promises, or representations relating to the terms of the final agreement are generally excluded from consideration by the court.[4]

---

1. See *Engleman v. Cincinnati Bd. of Edn.* (June 22, 2001), 1st Dist No. C–000597, 2001 WL 705575, jurisdictional motion overruled (2001), 93 Ohio St.3d 1452, 756 N.E.2d 116; *State ex rel. Midwest Pride IV, Inc. v. Pontious* (1996), 75 Ohio St.3d 565, 570, 664 N.E.2d 931.

2. See *Euvrard v. The Christ Hosp.* (2001), 141 Ohio App.3d 572, 575, 752 N.E.2d 326, jurisdictional motion overruled (2001), 92 Ohio St.3d 1433, 749 N.E.2d 759.

3. *Charles A. Burton, Inc. v. Durkee* (1952), 158 Ohio St. 313, 49 O.O. 174, 109 N.E.2d 265, paragraph one of the syllabus.

4. Id., paragraph two of the syllabus.

{¶ 8}  Although there is authority for the proposition that a party may offer evidence of prior or contemporaneous representations to prove fraud in the execution or in the inducement of an agreement, this exception to the parol evidence rule is not without limit.  As this court has held, "[p]arties may not prove fraud by claiming that the inducement to enter into an agreement was a promise that was within the scope of the integrated agreement but was ultimately not included in it."[5]

{¶ 9}  In *Bollinger, Inc. v. Mayerson,* the principal shareholder of a corporation entered into agreements whereby the assets of the corporation would be transferred to a new corporation formed for the purpose of completing the asset purchase.[6]  The purchase agreement was memorialized in written contracts with integration clauses.[7]  Under the terms of the written agreements, Marilyn Bollinger, the principal shareholder in the old corporation, was to be employed by the new corporation, and the old corporation was to receive royalties to satisfy promissory notes to the old corporation's minority shareholders.[8]

{¶ 10}  After the new corporation had failed, Bollinger and the old corporation sued Manuel D. Mayerson, the sole shareholder of the new corporation, for fraud and breach of an oral contract.[9]  They claimed that Mayerson had fraudulently induced them into executing the contract by promising to provide limitless funding for the new corporation.[10]  We rejected that argument, stating the following:

{¶ 11}  "The substance of the alleged oral promise is clearly within the scope of the integrated agreements.  The agreements related to all aspects of the sale of the assets of Old Company to New Company, including Bollinger's employment and Bollinger, Inc.'s royalty payments.  * * * The substance of the alleged oral promise is part and parcel of the subject matter contained in the integrated agreements, that is, the terms of the transfer of the assets of Old Company to New Company.  Therefore, Bollinger and Bollinger, Inc. cannot contradict the terms of the written contract by evidence of the alleged oral promise.  Further,

---

5.  *Bollinger, Inc. v. Mayerson* (1996), 116 Ohio App.3d 702, 712, 689 N.E.2d 62, citing *Wall v. Firelands Radiology, Inc.* (1995), 106 Ohio App.3d 313, 666 N.E.2d 235, and *Busler v. D & H Mfg., Inc.* (1992), 81 Ohio App.3d 385, 611 N.E.2d 352.

6.  *Bollinger,* supra, at 707, 689 N.E.2d 62.

7.  Id. at 712, 689 N.E.2d 62.

8.  Id. at 708, 689 N.E.2d 62.

9.  Id.

10.  Id. at 713, 689 N.E.2d 62.

under the facts of this case, Bollinger could not have justifiably relied on any alleged oral promise on the part of Mayerson to fund New Company without limit." [11]

■ {¶ 12} We hold that the instant case is controlled by *Bollinger.* Here, the parties had expressly provided that the written APA was an integrated document. In the APA, the parties recited that "[t]his agreement and the exhibits hereto embody the entire agreement and understanding of the parties hereto and supersede any and all prior agreements, arrangements and understandings relating to the matter herein." The APA explicitly noted the existence of the liens on the radio station and placed the onus of securing the release of the liens on Stop 26.

{¶ 13} But the contract did not include the representations alleged to have been made by Squire concerning the creditors' willingness to accept lesser amounts for the release of the liens and did not include any representations about Stop 26's ability to secure the release of the liens. The APA merely made the release of the liens a condition to closing. As was the case in *Bollinger,* the representations in the instant case were squarely within the scope of the written contract but were not included in the document. Therefore, Citicasters could not contradict the terms of the contract with the alleged representations and could not claim that it had justifiably relied on those representations.

■ {¶ 14} Citicasters further argues that, even if the representations could not contradict or alter the terms of the APA, the agreements pursuant to which Citicasters made cash advances to Stop 26 were not integrated documents and therefore were not subject to the parol evidence rule. We disagree. For each of the advances made following the execution of the APA, [12] the parties agreed to amend the APA and specifically provided that the remaining terms of the agreement would remain in effect. The parties also amended the security agreement to reflect the new advances but retained that contract's integration clause. Thus, the advances from Citicasters to Stop 26 were made within the framework of the prior agreements and were subject to their integration clauses. Because the amendments to the APA and the security agreement did not contain the representations allegedly made by Squire, the rule set forth in *Bollinger* precluded recovery based upon those representations.

■ {¶ 15} Citicasters next argues that Bricker & Eckler was not entitled to invoke the parol evidence rule because the firm was not a party to the APA

---

11. Id.

12. The first cash advance was made contemporaneously with the execution of the APA. That advance was made pursuant to the security agreement, which contained an integration clause.

and the related agreements. Citicasters is correct in asserting that "strangers" to a contract are generally not permitted to invoke the rule.[13] Nonetheless, Bricker & Eckler was not a stranger to the contract under the very theory of recovery asserted by Citicasters. Citicasters asserted that Bricker & Eckler was vicariously liable for the actions of one of its partners, Squire, who was a signatory to the contract and also a shareholder and the legal representative of Stop 26. The theory of vicarious liability necessarily assumed that Squire was acting within his duties as an agent of Bricker & Eckler when he engaged in the transactions that were the subject of Citicasters' claims. In view of its own theory of liability, Citicasters cannot simultaneously be heard to assert that Bricker & Eckler was a "stranger" to the contract.[14] This conclusion is bolstered by the Supreme Court of Ohio's statement that the parol evidence rule may be invoked by a party or its privies.[15] Finally, under established principles of agency law, the principal is entitled to assert any defense that the agent would be entitled to assert.[16] Here, it is beyond dispute that Squire, as a party to the contract and as a shareholder of Stop 26, would have been entitled to invoke the parol evidence rule. Bricker & Eckler, as principal, was entitled to the same defense.

{¶ 16} Finally, Citicasters contends that it was entitled to present parol evidence under the holding of the Supreme Court of Ohio in *Galmish v. Cicchini*.[17] In *Galmish*, the parties entered into a contract for the sale of an office building.[18] Pursuant to the written agreement, the buyer promised to pay the seller one-half of all proceeds in excess of $765,000 if the property were conveyed to developers within one year.[19] The property was not conveyed within the one-year period, and the seller sued the buyer for breach of contract and

---

13. See *Bowman v. Tax Comm. of Ohio* (1939), 135 Ohio St. 295, 14 O.O. 189, 20 N.E.2d 916, paragraph one of the syllabus.

14. See *Bollinger*, supra, at 713, 689 N.E.2d 62 (sole shareholder of a corporation was not a stranger where he actively participated in the negotiations, signed the contract, and received all notices and other communications on behalf of the corporation). See, also, *Dalton v. Belden & Blake Corp.* (Feb. 9, 1999), 9th Dist. No. 97CA0073, 1999 WL 74627 (parol evidence rule may be invoked by "all whose rights stem from or depend upon the instrument, even though they were not parties to it").

15. See *Bowman*, supra, at 300, 14 O.O. 189, 20 N.E.2d 916.

16. See Restatement of the Law 2d, Agency (1958), Section 219, Comment *c*.

17. (2000), 90 Ohio St.3d 22, 734 N.E.2d 782.

18. Id. at 23, 734 N.E.2d 782.

19. Id.

fraud, arguing that the buyer had prevented the resale of the property to foreclose her right to one-half of the proceeds.[20]

{¶ 17} The court held that the parol evidence rule did not bar the fraud claim. In so holding, the court emphasized that the seller's claims "do not seek to contradict or vary the terms of the written agreement. In fact, they do not rest on any prior agreements or promises at all. * * * To the contrary, [the seller's] claims fully admit, and indeed rely upon, the fact that [the buyer's] promise to split the excess proceeds is, as stated in the written agreement, entirely conditional upon the sale of the property to Developers within one year."[21] The court stated that the proffered parol evidence was offered to show that the buyer "intended from the outset to prevent the fulfillment of the condition that would invoke his contractual promise to share the excess proceeds" and that the evidence was therefore not barred by the parol evidence rule.[22]

{¶ 18} The essence of the fraud in *Galmish*, then, was that the defendant did not intend to fulfill, at the time the contract was executed, the express contractual condition that induced the plaintiff to enter into the agreement.[23] Thus, the policy underlying the parol evidence rule, namely protecting the integrity of the written contract, was not implicated in *Galmish*.[24]

{¶ 19} The case at bar is distinguishable from Galmish. The representations or promises alleged to have been made by Squire were not evidenced in the written agreement. Although the APA and the related documents explicitly addressed the liens on the radio station, they did not contain Squire's alleged misrepresentations concerning Stop 26's financial ability to satisfy the indebtedness or the creditors' willingness to accept lesser amounts to release the liens. Citicasters' claims, then, did seek to contradict or vary the terms of the written agreements and thus ran afoul of the parol evidence rule. We therefore reject Citicasters' argument that the case at bar is controlled by the holding in *Galmish*.[25]

---

20. Id. at 25–26, 734 N.E.2d 782.

21. Id. at 30–31, 734 N.E.2d 782.

22. Id. at 31, 734 N.E.2d 782.

23. Id.

24. We also reject Citicasters' suggestion that the *Galmish* court abolished the rule set forth in *Bollinger* or that it otherwise diminished the purview of the parol evidence rule. The Galmish court expressly stated that parol evidence remains inadmissible to contradict or vary the terms of a written contract. See id. at 29, 734 N.E.2d 782.

25. Also, given our holding concerning the parol evidence rule, we need not address Bricker & Eckler's argument that recovery was barred by the doctrine of attorney immunity as described

{¶ 20}   For the foregoing reasons, we hold that the parol evidence rule precluded recovery in the case at bar and that the trial court correctly granted the motion for judgment on the pleadings.   The assignment of error is overruled, and the judgment of the court of common pleas is affirmed.

Judgment affirmed.

DOAN, P.J., and GORMAN, J., concur.

in *Scholler v. Scholler* (1984), 10 Ohio St.3d 98, 10 OBR 426, 462 N.E.2d 158, paragraph one of the syllabus.