OPINION
{¶ 1} This is an appeal from a judgment of the court of common pleas ordering specific performance of a contract for the sale of real property. The matter in dispute is the price to be paid.
{¶ 2} Plaintiff, Robert D. Lamme, entered into a written Lease With Option To Purchase with a tenant of his real property, Jill Bottorff. The agreement, which was drafted by Bottorff, provided for a one-year tenancy beginning November 1, 1998. Section H of the writing grants Bottorff and/or Defendant Thomas W. Pope, a co-tenant who was not a party to the lease, an option to "buy the leased premises at a purchase price of $132,000. Ninety five % of the rental payments . . . received by [Lamme] to the date of closing shall be credited as payments on the purchase price. The option shall be exercised by notice from [Bottorff] and/or Thomas Pope to [Lamme] . . ." The option expired at the expiration of the lease and, if exercised, "[c]losing shall be within 30 days after the date [Bottorff] and/or Thomas Pope exercise the option to purchase."
{¶ 3} Bottorff and Pope occupied the property until they had a falling out. Pope remained there and paid the rent after Bottorff moved out. Bottorff and Lamme had conversations in which Bottorff expressed her intention to purchase the property. Learning of that, Pope sent a written notice to Lamme on October 19, 1999, within the term of the lease, exercising his option to purchase. When Bottorff learned of that, she sent Lamme a similar written notice approximately one week later, exercising her option.
{¶ 4} Faced with competing notices, Lamme was unsure of what to do. After considering his position, he decided to sell to Bottorff because his prior dealings on the lease had been with her. A closing was set by Bottorff's lender. Learning of that, Pope filed an Affidavit in Aid of Title with the County Recorder, asserting his option rights. When Bottorff's lender discovered the affidavit, it withdrew its financing offer and no closing took place. Bottorff then filed her own Affidavit in Aid of title shortly after that.
{¶ 5} These further events put Lamme into a deeper quandary. Lamme rejected further demands by Pope's attorney to close on a sale to Pope. Lamme later testified that he had expected to sell to Bottorff and Pope, jointly, and he was hoping they would settle their differences and decide which of them would purchase the property from him so that "I won't have to put out the expense of having an attorney." (T. 104).
{¶ 6} Lamme, who resided in Pennsylvania throughout this time, eventually retained an attorney in Greene County. The attorney scheduled a closing at his office on August 24, 2001. Lamme appeared with deeds conveying the property to Pope, to Bottorff, and to both of them jointly. It appears that Bottorff had by then lost interest.
{¶ 7} Pope was willing to close on August 24, 2001, but wanted a 95% credit against the $132,000 purchase price for all the rent Lamme had been paid "to the date of closing" on that day. Lamme balked, and refused to give a credit for any more than the rent he was paid during the twelve month term of the lease, until October 31, 1999. No closing took place.
{¶ 8} More time passed, and after further demands from Pope's attorney Lamme filed the underlying action to quiet title against Bottorff and Pope. Pope filed a counterclaim for breach of contract, requesting specific performance and damages. The matter was referred to a magistrate for hearing. At those proceedings Bottorff waived any rights she had to purchase the property from Lamme and was dismissed as a party.
{¶ 9} The magistrate heard testimony from Bottorff, Lamme, and Pope. Lamme testified that he was "very anxious to sell" (T. 77) when he rented the property to Bottorff, and that a sale was the primary purpose of the lease he signed offering options to purchase to Bottorff and/or Pope. Indeed, the purpose of the credit against the purchase price he offered them was as an inducement to buy. Lamme, Bottorff, and Pope each testified that when the agreement was made the parties had intended that the credit would apply to the rent paid during the one-year term of the lease, expecting that a closing on any sale would take place no later than thirty days after the lease terminated.
{¶ 10} The magistrate entered a decision in favor of Pope on his claim for specific performance. However, the credit against the purchase price was limited to the rent Lamme was paid during the twelve-month term of the lease, not to the date of the sale that was ordered. Pope filed objections. The court overruled the objections and adopted the magistrate's decision. Pope filed a timely notice of appeal.
{¶ 11} Assignment of Error
{¶ 12} "The trial court erred by failing to enforce the parties' contract as written."
{¶ 13} Lamme took no appeal from the trial court's judgment awarding Pope specific performance on his breach of contract claim against Lamme. Therefore, the matter of the breach is not before us. That forecloses Lamme's contentions on appeal that Pope had no valid option because his option right was foreclosed by Bottorff's prior "verbal" exercise of the option she had, and that the affidavits in aid of title that Pope and Bottorff each filed prevented Lamme from selling to Pope. Those issues are subsumed in the finding that Lamme breached the contract, which is necessarily the foundation of the unappealed order for specific performance in favor of Pope.
{¶ 14} The sole issue on appeal is raised by Pope's contention that he is entitled under the contract between Lamme and Bottorff to a credit for rent that Lamme was paid not only for the one-year term of the lease contract but until the date of closing ordered by the court.
{¶ 15} Pope relies on the "to the date of closing" provision in the lease, and on the well-established principle of contract interpretation that the terms of a writing, when they are plain and unambiguous, cannot be varied by parol evidence to the contrary concerning what the parties to the contract intended. However, that rule of construction is subject to exceptions.
{¶ 16} In a suit between a party to the written instrument and a stranger, parol evidence is admissible to vary the terms of the writing. Clapp v. Huron County Bkg. Co. (1892),50 Ohio St. 528; Bowman v. Tax Commission (1939), 135 Ohio St. 295. Pope was a stranger to the contract between Lamme and Bottorff, only acquiring rights thereunder as a third-party beneficiary. Therefore, parol evidence relevant to what the parties intended concerning the credit was admissible in an adjudication of Pope's counterclaim against Lamme for breach of contract.
{¶ 17} Another exception arises when otherwise clear unambiguous terms in a written agreement are in conflict. Then,
{¶ 18} ". . . extrinsic parol evidence is always admissible to give effect to a written instrument by applying it to its proper subject matter, by proving the circumstances under which it was made, thereby enabling the court to put itself in the place of the parties, with all the information possessed by them, the better to understand the terms employed in the contract, and to arrive at their intention, and the object sought to be accomplished by the parties. And great latitude should be allowed in this respect." 43 Ohio Jurisprudence 3d, Evidence and Witnesses, Section 568, pp. 428-430.
{¶ 19} The unequivocal thirty-day closing requirement creates a conflict with the equally unequivocal "to the date of closing" provision when no closing has occurred within the thirty days and the parties, or in this case Lamme and Pope, have not agreed to extend the closing. The court could reasonably take and rely on parol evidence to determine what the parties intended concerning the extent of the credit in that event. Id. Further, as a stranger to the contract between Lamme and Bottorff, Pope cannot complain that the testimony all three gave was inadmissible for that purpose. We cannot find, therefore, that the trial court abused its discretion when it relied on the testimony of Lamme, Bottorff, and Pope to determine the credit to which Pope is entitled.
{¶ 20} It is undisputed that Lamme and Bottorff intended that the period to which the 95% credit would apply was the one-year term of the lease. The trial court could reasonably find that Pope is entitled to no greater credit than that, Lamme's foot-dragging notwithstanding, because Lamme and Bottorff intended that he would have no greater credit than that when they entered into their agreement.
{¶ 21} Pope argues that Lamme should not be rewarded for his breach by being allowed to retain the monthly rental that Pope paid for several more years after the lease expired and while Lamme ignored his duty to sell to Pope. We agree that the record shows that Lamme's indecision was self-serving; he failed to obtain legal advice to learn what his duties were, and rejected demands by Pope's attorney to close the sale, all the while accepting Pope's rent. By the same token, however, Pope failed to protect his rights by commencing a timely action for breach of contract and specific performance, which could have saved him much of the additional rent he paid Lamme. Instead, Pope continued to pay rent to Lamme. He cannot now expect the court to make him whole for losses arising from his own failure to assert his rights in a timely fashion.
{¶ 22} The assignment of error is overruled. The judgment of the trial court will be affirmed.
Wolff, J. and Young, J., concur.